HARTLEY *v.* BOARD OF CANVASSERS OF BAY COUNTY.

ELECTIONS—BALLOT BOXES—CUSTODY OF KEYS AND SEAL—RECOUNT.
Section 5, chap. 14, Act No. 203, Pub. Acts 1917, requiring that after the ballots are counted and placed in the ballot box it shall be securely sealed, and shall then be delivered to the township or city clerk, the key to be held by the chairman of the election board and the seal by one of the other inspectors, is mandatory, and where not complied with an application for a recount of the ballots was properly denied.

See note in 30 L. R. A. (N. S.) 602.

Certiorari to Bay; Snow, J., presiding. Submitted March 31, 1919. (Calendar No. 28,752.) Decided April 3, 1919.

Mandamus by Lee Hartley to compel the board of canvassers of Bay county to recount the ballots in the primary election for the nomination of a candidate for county road commissioner. William H. McCauley, an opposing candidate, was allowed to intervene. From an order denying the writ, plaintiff brings certiorari. Affirmed.

*W. B. Henry* and *R. H. Lane,* for appellant.
*Stoddard & McMillan,* for appellee.
*Lewis Coumans, Jr.,* and *Hubert J. Gaffney,* for intervener.

STONE, J. This is certiorari to review the decision of the circuit judge denying relief on an application of the plaintiff for mandamus to require the defendants, constituting the board of county canvassers of Bay county, to reconvene and recount the votes cast in the city of Bay City at the primary election held therein on March 5, 1919, for the office of county road commissioner of said county and to reject certain uninitialed ballots.

The plaintiff and one William H. McCauley were the only candidates for said office on the Republican ticket at said primary election. Mr. McCauley having been declared nominated, the plaintiff, on March 8, 1919, filed his petition with the board of county canvassers for a recount of the votes in the city of Bay City, and as a result of such recount, on March 15th the said board certified that Mr. McCauley had received 2,872 votes and the plaintiff 2,851, making a majority for the former of 21 votes. Thereupon the plaintiff filed his petition in the circuit court for mandamus, setting up that certain uninitialed ballots had

been counted by the said board, and that if such ballots had not been counted the plaintiff would have a majority of 86 votes for said office.

The answer of the respondents, and of Mr. McCauley, who was allowed to intervene, admitted the counting of such uninitialed ballots, but contended that the ballot boxes, seals and keys were all returned to the city clerk or recorder of the city of Bay City on the night of election, and that the keys of said boxes were not retained by the chairmen of the several election boards and the seals by other inspectors of election, consequently that the plaintiff was not entitled to a recount at all.

It was conceded and was taken as a fact for the purpose of the hearing, that there were about 440 uninitialed ballots counted for Mr. McCauley, and 367 uninitialed ballots counted for the plaintiff, and that if such ballots were all thrown out it would have changed the result of said election. It was also conceded and taken as a fact on the hearing that the city recorder of Bay City had the custody of the ballot boxes, keys and seals from the night of the election up until the recount, except in three instances, which would not change the result of this case.

Section 5 of chapter 14 of Act No. 203, Pub. Acts 1917, is pertinent here; it is as follows:

"After the ballots of each kind are counted they shall, together with one tally sheet, be placed in the ballot box which shall be securely sealed in such manner that it cannot be opened without breaking such seal. The ballot box shall then be delivered to the township or city clerk, but the keys of said ballot box shall be held by the chairman of the board and the election seal by one of the other inspectors of election."

At the hearing of the mandamus case before Hon. E. A. Snow, circuit judge of Saginaw county, it was stipulated in open court by the parties that three prop-

ositions should be argued and left for the determination of the court:

(1) Does the fact that the provision of the law requiring the key, seal, and box containing the ballots to be retained by different members of the election inspectors of the various precincts, was not complied with, bar the right of the board of county canvassers to open the boxes and recount the ballots?

(2) Is mandamus the proper remedy for relator to secure the relief prayed?

(3) Should ballots not initialed as required by law be counted?

The opinion of the learned circuit judge so clearly states his position and the law of the case that we insert the substance of it here:

"1. If the first question is answered in the affirmative, it disposes of the case, because the undisputed testimony is that in practically all of the precincts of the city of Bay City, the box, key and seal were all delivered to the city recorder on the night of the primary and that all three remained in his custody until the boxes were brought before the board of canvassers on the recount demanded by relator. In a very few instances the key was turned over to the recorder on March 10, following the primary held on March 5th. The seals in all the precincts were turned over to the recorder with the boxes the night of the primary. The boxes, keys and seals in all cases were brought before the board of canvassers by the recorder.

"Is this provision of law requiring the boxes, keys and seals to remain in the possession of the different members of the election inspectors mandatory, or is it merely directory? The former principle is contended for by the respondents and it is claimed that a failure to comply strictly with the law in this regard would prevent the opening of the boxes for a recount; the latter principle, viz.: that the law is directory, is contended for by the relator.

"Whether a statutory requirement is mandatory or directory depends upon its effect.

"(a) Does some substantial right depend on it? If

a substantial right does depend on it, it is mandatory; if not, it is directory only.

"(*b*) Can injury result from ignoring it? If injury can result, it is mandatory; if no injury can result, it is directory only.

"(*c*) What was the purpose of the legislature in enacting the law? If the purpose was simply to suggest a mode of procedure and to point out what procedure would be best, it must be considered only as directory. If, on the contrary, it was intended by the legislature that the mode of procedure provided for was the only one that could be followed in giving effect to the general principles of the act, it must be construed as mandatory.

"(*d*) Can the purpose of the legislature in enacting the law be accomplished in a manner other than that prescribed? If it can, the law is directory, if not, it is mandatory.

"(*e*) Will the same results be obtained by not following the provisions strictly? If they can, it is directory, but if they cannot be so obtained, it is mandatory.

"If we are able to make application of the above general principles to the instant case, it is easy to determine whether or not this provision of the election law should be held mandatory or directory.

"(*a*) Does a substantial right depend upon keeping the key, seal and box in separate hands? In our opinion the substantial right to have the integrity of the ballot box preserved depends upon this very provision. If the return of the election inspectors is not to control it must be known that the ballots in the boxes when opened for recount are the same ballots placed in it by the election inspectors, and this fact cannot be known if opportunity has been afforded to change them, and it goes without saying, that if one man possesses all the equipment necessary to get into the boxes and then to put the box back in substantially the same condition it was before he opened it, that the opportunity to change the ballots has been afforded.

"Making application then, of this principle to the instant case, we must reach the conclusion that the law is mandatory.

"(b)¹ Can injury result from ignoring this provision of the law? Without doubt, injury may result, because the opportunity is given to alter the condition of the ballots with but slight possibility of detection. Viewed from this standpoint, then, we must conclude the law to be mandatory.

"(c) The purpose of the legislature in making this provision of the law is apparent. There is less liability of three men being corrupt than there is of one, and with these three necessary articles being in the hands of three different individuals, in order to perpetrate a fraud, there must be a conspiracy among them and a getting together to accomplish a dishonest and illegal result. The legislature must have had this purpose in mind and we are not disposed to thwart the will and intent of the legislature by holding that this provision of the law is without meaning. If the purpose of the legislature then is to govern and control the possession, it must be held that the law is mandatory and not merely directory.

"(d) Realizing the purpose of the law, can it be accomplished by failing to follow its provisions? The answer to this question brings us again to the irresistible conclusion that the law was made to prevent fraud, to secure honest election and to see that the elector had his vote counted as registered. We are unable to see how this result could be obtained if it made no difference who had the key, seal and box after the vote was counted. Controlled by this principle, then, we must again conclude that the law is mandatory.

"(e) Will the same result be obtained by not following the law as by following it? It may be and may not, and because it may not, giving construction to the law upon this principle, again we must say that the law cannot be regarded as simply directory.

"For the above reasons we are of the opinion that the provision of the law under consideration should be construed as mandatory from opening the boxes for a recount of the votes.

"This conclusion makes unnecessary the consideration of propositions 2 and 3, although we are of the opinion that the relator has sought the proper remedy, and that he is entitled to have thrown out the ballots not initialed as provided by law.

"The relief prayed for by relator is hereby denied with costs to the respondents."

In our opinion, having in view the purpose and object of this statute, and the mischief to be remedied, its provisions are mandatory. Not only is the imperative word "shall" used throughout the section, but the closing sections of the act make a violation of this statute a misdemeanor. All of these things are aids or "earmarks" to aid us in arriving at a conclusion whether a given statute is mandatory or directory.

In support of the views expressed by the circuit judge we think the following cases in this court are in point: *Andrews* v. *Otsego Probate Judge*, 74 Mich. 278; *Keith* v. *Wendt*, 144 Mich. 49; *Ritze* v. *Iron County Canvassers*, 172 Mich. 423. We have not space to quote from these decisions.

Counsel for plaintiff have called our attention to *Alward* v. *Board of Sup'rs of Oakland Co.*, 187 Mich. 573, and *Baldwin* v. *Board of Sup'rs of Alger Co.*, 189 Mich. 372. To show that in those cases this court was dealing with other and different statutes we need only call attention to the language of Justice OSTRANDER on pages 378 and 379 of the last-named case. We also quote the following language from said opinion on page 382:

"As has been stated, it was the law when the statute in question was passed that, unless it appeared that the ballots had been so secured, they could not be recounted; that the recounting boards were not authorized to ascertain whether, in fact, the statute precautions for the preservation of ballots having been omitted, the original ballots had been preserved. What possible purpose could be subserved in empowering boards to subpœna witnesses, administer oaths, and take all necessary proceedings to insure a correct count of the votes, if, as theretofore, the evidences of the lack of statutory sealing of the boxes was conclu-

205—Mich.—34.

sive of the right to recount the votes? It is plain, in my opinion, that the legislature intended in this act to abolish the test, 'Have the ballots been preserved as the law directs?' and to substitute therefor the test, one of pure fact, 'Have the ballots been, in fact, preserved notwithstanding the failure to observe the legal requirements for their preservation?'"

In a number of cases collected in the *Ritze Case*, we have held that the seal is a necessary part of the election equipment, and that the failure of the inspectors to properly seal the boxes deprives a defeated candidate of his right to a recount. Of what use is the seal if it is to be held by the same officer who has the key and the box in his possession? The only use of the seal is that it is to be a check on the key and the box, and to render silent but unimpeachable evidence of the sanctity of the box. To assert that the seal may be given to the same officer who holds the key and the box, is equivalent to saying that there is no need of a seal at all, because it would be in the power of the officer possessing all of these articles to break the seal, open the box, change the ballots, relock the box, impress a new seal thereon, and nobody would be the wiser. It is no answer to say that an honest officer would not do this. Such things have occurred; and it was to avoid such and similar evils that the statute was enacted.

The order denying the writ of mandamus is affirmed, with costs against the plaintiff.

BIRD, C. J., and OSTRANDER, MOORE, STEERE, BROOKE, FELLOWS, and KUHN, JJ., concurred.