MILES, *ex rel.* KAMFERBEEK, *v.* FORTNEY.

ELECTIONS—BALLOTS INITIALED WITH LEAD PENCIL VOID— MANDATORY STATUTORY PROVISIONS.

> Provisions of the general election law (sections 5 and 16, chap 10, and section 3, chap. 14, Act No. 203, Pub. Acts 1917) requiring ballots to be initialed by one of the inspectors or clerks of election in ink or with indelible pencil, and providing that ballots not so initialed shall not be counted, *held*, mandatory, and that ballots initialed with lead pencil were properly rejected by the canvassing board.

Error to Ottawa; Dunham (Major L.), J., presiding. Submitted April 19, 1923. (Docket No. 131.) Decided July 19, 1923.

*Quo warranto* proceedings by Fred T. Miles, prosecuting attorney, on the relation of Fred Kamferbeek against Delbert Fortney to try the title to the office

On validity and construction of law as to irregularities in marking ballots, see notes in 16 L. R. A. 754; 47 L. R. A. 806; 32 L. R. A. (N. S.) 730.

of sheriff of Ottawa county.    Judgment for defendant.    Plaintiff brings error.    Affirmed.

*Fred T. Miles,* Prosecuting Attorney, *Robinson & Den Herder,* and *Diekema, Kollen & Ten Cate,* for appellant.

*Louis H. Osterhous,* for appellee.

STEERE, J.    Fred Kamferbeek and Delbert Fortney were contesting candidates for the office of sheriff of Ottawa county at the general election held on November 7, 1922.    A stipulation appears in the record which clearly presents in detail the facts involved.    Pertinent to the question presented here for determination, it appears the returns of inspectors of that election to the board of county canvassers showed Kamferbeek had a majority of 148.    Fortney demanded a recount of named election precincts, followed by Kamferbeek demanding a recount in all precincts of the county.    The canvassing board complied and conducted a complete recount of all precincts.    In so doing the board rejected 721 ballots cast for Fortney and 1,284 cast for Kamferbeek, for the reason that inspectors of election had indorsed them with deleble pencils, either black or blue, and not "in ink or with indelible pencil" as the statute requires.    The result of the recount showed 2,424 votes cast for Kamferbeek and 2,732 for Fortney which gave the latter a majority of 308.    So finding, the board issued a certificate of election to Fortney under which he was duly qualified and assumed the duties of the office.

Kamferbeek thereafter instituted *quo warranto* proceedings in the circuit court of Ottawa county to contest between them right of title to the office.    He seeks reversal of a judgment of the circuit court sustaining the recount and confirming Fortney's title to the office.

Counsel for the respective parties agree that the single controlling question for determination is the validity of the pencil initialed ballots rejected. That question involves the force and effect of the following provisions of Act No. 203, Pub. Acts 1917 (Comp. Laws Supp. 1922, § 3848 [1-254]), being the general election law pursuant to which this election was held.

Sections 5 and 16 of chapter 10 provide as follows:

"SECTION 5. All official ballots before being delivered to electors applying to vote shall be initialed in the manner hereinafter set forth. At the opening of the polls the board of inspectors of election shall direct one of the inspectors or clerks of election to initial a supply of ballots; and such inspector or clerk shall proceed to write his initials, in ink or with indelible pencil, in his ordinary handwriting and without any distinguishing mark of any kind, or he shall, with a fac-simile signature, using indelible ink, stamp his initials on the back of each ballot, directly below the perforated line, so that the initials shall not be torn off when the corner of the ballot containing the number is torn off before the ballot is deposited in the box. The said inspector or clerk shall not write or stamp his initials on the ballots which bear the initials of the city, township or village clerk. As the supply of initialed ballots shall decrease, additional ballots shall be initialed by an inspector or clerk, so that there shall be a supply of each kind of ballots, so initialed, at all times on hand for delivery to electors applying to vote. * * *

"SEC. 16. No ballot shall be placed in the ballot box unless it has written or stamped on the back thereof, in the manner provided by law, the initials of an inspector or clerk of election or of the township, village or city clerk."

Section 3 of chapter 14 provides:

"SECTION 3. In the canvass of the votes, any ballot which is not indorsed with the initials of an inspector or clerk of election or of the city, village or township clerk, as provided in this act, and any ballot which shall bear any distinguishing mark or mutilation, shall be void, and shall not be counted. All such

ballots shall be preserved, marked by the inspectors 'not counted,' and kept separate from the others by being tied or held in one package by a rubber band or otherwise.   Any ballot, or part of a ballot, from which it is impossible to determine the elector's choice of candidate shall be void as to the candidate or candidates thereby affected."

It is undisputed that plain provisions of each of the three sections quoted were violated in the particulars that the ballots in question were not indorsed "in ink or with indelible pencil," they were placed in the ballot box without the initials of an inspector or clerk of election written or stamped upon them "in manner provided by law," and in such condition they were counted in the canvass of votes, although the act expressly provides such ballots "shall be void," and not be counted.

Counsel for appellant urge that the provisions quoted relative to initialing ballots are part mandatory and part directory,—mandatory in requiring that ballots shall be initialed but directory as to the manner in which the initialing shall be done; and failure of the election inspectors to strictly comply with the statute in the particular shown is only an irregularity which should not be construed as destroying the ballot of an innocent voter.   For appellee it is contended that all these provisions for safeguarding elections are mandatory and as to the omission involved here it is provided in express terms that ballots indorsed with the initials of the authorized election officials in pencil, not indelible, are void and cannot be counted.   We are furnished with able briefs by the respective parties in which their counsel have industriously marshalled and discussed many decisions in this and other jurisdictions touching the question of whether certain provisions of election laws under consideration are to be regarded as mandatory. Though certain decisions which expressly dwell upon

the appealing argument that innocent electors should not be disfranchised by mistakes of election inspectors cannot be included, an examination of the many cases cited shows that the great weight of authority, including our own decisions, sustains the following text-book statement of the test:

"While it is well settled that mere irregularity on the part of election officers, or their omission to observe some merely directory provisions of the law, will not vitiate the poll, there has been some confusion and conflict as to what we are to understand by irregularities, and as to what provisions of statute are to be regarded as directory and what mandatory. A few remarks upon this subject will be proper in this connection. The language of the statute to be construed must be consulted and followed. If the statute expressly declares any particular act to be essential to the validity of the election, or that its omission shall render the election void, all courts whose duty it is to enforce such statute must so hold, whether the particular act in question goes to the merits, or affects the result of the election, or not. Such a statute is imperative, and all considerations touching its policy or impolicy must be addressed to the legislature." McCrary on Elections (4th Ed.), § 225.

"The statutes ordinarily provide that the official ballot shall bear certain printed indorsements and also frequently that they shall be marked with the initials or names of certain of the election officers. Provisions of this kind are ordinarily regarded as mandatory, and where this rule prevails it is immaterial whether the failure to indorse the ballots resulted through ignorance or through actual fraud on the part of the election officers. * * *

"Statutes giving directions as to the mode and manner of conducting elections will be construed by the courts as directory, unless a noncompliance with their terms is expressly declared to be fatal, or will change or render doubtful the result. * * * Where the terms of the statute are absolute, explicit and peremptory, no discretion is given." 20 C. J. pp. 151, 181.

"Statutes expressly declaring specified acts, or omissions, fatal to the validity of an election, or expressly prohibiting the performance, or omission, of specified acts, are mandatory. While statutory provisions, prescribing acts which are, in their nature, absolutely essential to the validity of the election, may be mandatory, in whatever phraseology expressed, the most unimportant requirements may be made mandatory, by a clear expression of the legislative will." Paine on Elections, p. 418.

As to the legal definition of "mandatory" we find that:

"In the construction of statutes, this word is applied to such as require to be obeyed, under penalty of having proceedings under them declared void." Bouvier's Law Dictionary.

"A provision in a statute is *mandatory* when disobedience to it will make the act done under the statute absolutely void." Black's Law Dictionary.

Concededly the first and controlling question for determination is the legislative intent. A declared purpose of the act as stated in its title is "to prevent fraud and deception in the conducting of elections and to guard against abuses of the elective franchise." As essential to that end this and preceding election laws have been enacted prescribing for the conduct of elections the use of described official ballots, the manner of voting, canvassing, and preserving them until after the time of a possible recount. The provisions under consideration are in plain, simple, nontechnical language of command prescribing what "shall" and what "shall not" be done, made more emphatic by the declaration that ballots cast in violation thereof "shall be void, and shall not be counted." If rules for construction or interpretation of obscure provisions in an act have any application here, the following unquestioned rule is applicable:

"In the construction of a particular statute, or in the interpretation of any of its provisions, all acts relating to the same subject, or having the same general purpose, should be read in connection with it, as together constituting one law. The endeavor should be made, by tracing the history of legislation on the subject, to ascertain the uniform and consistent purpose of the legislature, or to discover how the policy of the legislature with reference to the subject-matter has been changed or modified from time to time." 36 Cyc. pp. 1147-1149.

A general election law requiring official ballots to be initialed was passed in 1891 (Act No. 190, § 22 [1 Comp. Laws 1897, § 3632]) and provides they shall be initialed "in ink on the upper left-hand corner of the back."

It was amended in 1901 (Act No. 214, § 22) providing that the initialing should be done in ink "but not upon the perforated corner."

Section 22 as amended in 1905 (Act No. 55) directing that the initials be written in ink and placed on the lower left-hand corner of the back of the ballot.

This section was again amended in 1909 (Act No. 192) directing the inspector "to write his initials in ink or with lead or indelible pencil."

Section 22 was again amended in 1915 (Act No. 141 [1 Comp. Laws 1915, § 3693]) providing that the indorsement should be made "in ink or with lead or indelible pencil (or with a fac-simile signature stamp of his initials, using indelible ink)."

In 1917 the legislature passed Act No. 203, known as the "Michigan election law," following closely in section 5 of chapter 10 the requirements of former section 22 as to initialing of ballots, but returned to the former safeguard requiring the indorsement to be made "in ink or with indelible pencil," or with a fac-simile signature stamped on the back of the ballot "using indelible ink," by eliminating the three words "or with lead" found in the amendment of 1915.

Thus fairly indicating an intent in harmony with the plain language upon the subject found elsewhere to make the use of an indelible pencil or ink in officially indorsing the ballot a prerequisite to its validity.

Somewhat analogous as to intent, the court in *Stephenson* v. *Purchase,* 214 Mich. 95 (14 A. L. R. 496), had occasion to construe a change in a section of the poor debtors' act, which prior to the legislative session of 1877 read "The debtor, after being so discharged shall be forever exempt from arrest or imprisonment for the same debt, *and shall be discharged from such debt,*" etc. It was there said:

"At that session (1877) the section was amended and the words '*and shall be discharged from such debt*' were eliminated, leaving the section to stand in its present form. Had it been the intention of the legislature to protect the debtor's property from execution after being discharged, it is hardly conceivable that it would have eliminated those words from the statute. The fact that it did so indicates clearly a contrary intention."

In *Lindstrom* v. *Board of Canvassers,* 94 Mich. 467 (19 L. R. A. 171), this court plainly stated the general principle of law applicable here as follows:

"It may be stated, as a general rule, that the provisions of the law relating to the manner of conducting elections will not be held so far mandatory as that a departure therefrom will result in the disfranchisement of a district or a class of voters, or the defeat of a candidate himself free from fraud, except in cases where the legislative intent that such departure shall have that effect is clearly and unequivocally expressed. This is a rule which has been applied in this State."

In *Attorney General* v. *Stillson,* 108 Mich. 419, recognizing that mistakes are often made by election officials which do not show the result has been changed, and that many other things may occur in an

election which can be treated as irregularities, it was said:

"On the other hand, where fraud appears upon the part of the inspectors, the voter must sometimes be deprived of his vote. * * * And this must always be the case where mandatory provisions are disregarded, if the result would be thereby changed."

In *Attorney General* v. *Kirby*, 120 Mich. 592, a provision of the election law requiring official ballots to be kept in the custody of an inspector was held mandatory and the vote of an entire township declared void, because an unofficial attendant was appointed to hand out ballots to the voters after they had been officially marked, although all parties acted in good faith and it did not appear that the voters were influenced thereby or any protest against his so doing was made during the election.

In *DeGaw* v. *Fitzsimmons*, 124 Mich. 511, the law then required ballots should be initialed by an inspector with his own initials in ink and handed by him to the voters. The important questions involved appear to have been the validity of ballots initialed with a Prussian blue pencil instead of ink, ballots indorsed with an abbreviation of the given name of the inspector instead of his initials, and the right of the clerk to distribute the ballots. Each side contended the requirements were directory in part and mandatory in part, but were not in harmony as to which particular parts the respective attributes appertained. The court held that all the provisions should be treated alike and, it appearing that by so doing the result would be the same, found it unnecessary to prescribe the exact treatment in issue here, but said:

"Relator will be benefited by the exclusion of the ballots initialed in blue pencil; respondent, by the exclusion of the others. To our mind, the law is mandatory as to all of these requirements, or directory as to all. At all events, if it is to be held mandatory

as to the requirement that only inspectors can handle the ballots, it must be so construed as to the requirement that they be initialed with ink."

In *People* v. *Rinehart,* 161 Mich. 585, the court held mandatory a provision of the election law requiring that the inspector should initial the lower left-hand corner of the back of each ballot, but not upon the perforated corner, and rejected as invalid the vote of an entire township because that mandate was not observed.     It was claimed there, as here, that the law so construed was unconstitutional because it deprived citizens not at fault of their constitutional rights as electors.     Upon that subject the court said in part:

"Continuing upon the subject of the constitutionality of the law which is attacked in this case as it was there (*Attorney General* v. *Stillson, supra*), we said much in the last mentioned case that can as well be read there as to repeat it here.     We held these laws within the powers expressly conferred by the Constitution, although they might require some sacrifice by the individual for the public good.     The statute expressly provides that such ballots as these shall be neither placed in the box nor counted, and we have no alternative but to apply the law."

In *Hartley* v. *Board of Canvassers,* 205 Mich. 523, one of the questions involved was "should ballots not initialed as required by law be counted?"     While violation of the requirements of the act that the key, seal and box containing the ballots be retained by different members of the board of election inspectors was held a sufficient ground for denying a recount, the reasons given are of equal application here.     The opinion quotes with approval as clearly stating "the law of the case" certain portions of an opinion filed by the trial judge in which it was said that although the ground more fully discussed disposed of the case, "We are of the opinion that the relator has sought the proper remedy and that he is entitled to have

thrown out the ballots not initialed as provided by law." The following views by this court upon the section of the act then under consideration can be applied with equal force to the provisions involved here:

"In our opinion, having in view the purpose and object of this statute, and the mischief to be remedied, its provisions are mandatory. Not only is the imperative word 'shall' used throughout the section, but the closing sections of the act make a violation of this statute a misdemeanor. All of these things are aids or 'earmarks' to aid us in arriving at a conclusion whether a given statute is mandatory or directory."

Stress is laid by appellant on the case of *Horning* v. *Board of Canvassers*, 119 Mich. 51, a case heard in this court on certiorari to mandamus in which it was held that provisions of the election law requiring an inspector to write his initials upon the upper left-hand corner of the back of the ballot, and declaring void all ballots not so indorsed with the initials of the inspector, did not authorize rejection by the canvassers of ballots inadvertently indorsed by the inspector in the lower right-hand corner, the court holding, as is claimed, so much of the statute as designated the particular place for indorsement directory only. While some things are found in the opinion which seem to support that view, the court did not in express terms declare the statutory provision as to indorsements merely directory. It points out that "the indorsement of the initials was made in all respects as required by law except that, instead of being in the upper left-hand corner they were in the lower right-hand corner. The ballot when folded could not be told from a folded ballot with the initials in the upper left-hand corner. The inspectors of election did not intend to do any wrong."

The conspicuously essential purpose of requiring initialing of official ballots to be done in ink or indelible

pencil is to insure permanency of identification by preserving the indorsement and thereby prevent, or render less easy the accomplishment, alteration or destruction of the identifying marks on the ballot. This might perhaps be as well accomplished by initialing ballots in the lower right-hand corner as it would be by initialing them in the upper left-hand corner. There is nothing in the opinion suggesting that the statutory requirement that ballots be initialed with ink or indelible pencil is merely directory. We think the opinion may best be construed as holding the essential requirements of a mandatory statute had been substantially complied with.

It may be conceded that the exact question of whether a common lead pencil may be legally used to indorse official ballots in the face of a statute declaring it shall not be done and the consequences of so doing has not been directly passed upon by this court, but the legal principles applicable to an election statute mandatory in form, requiring a certain thing to be done or not done and declaring that if the requirements are not complied with the ballot shall be void and not counted, have been thoroughly discussed and settled adversely to appellant's contention by our former decisions in analogous cases. In the recent case of *Smith* v. *Board of Canvassers*, 220 Mich. 318, involving the question of whether a certain section of the election law is mandatory or directory, Justice WIEST graphically states those principles in part as follows:

"The evident purpose of the precautions prescribed in the statute is to preserve the integrity of the ballots, so that, if necessary to resort to a recount thereof, it may be done with the assurance of having the ballots present the identical verity they bore when cast. Something considered just as good will not satisfy the statute. The mandate of the statute must be obeyed. If not obeyed in every particular the

ballots lose their verity in the eye of the law, and no evidence can be permitted to supply such loss. In the amendment of 1921 (above quoted) the legislature cut away some of the previous methods of securing the preservation of the integrity of the ballots exactly as cast and substituted a new security. The old law was mandatory, and the new law is no less so. *Campbell* v. *Murray*, 216 Mich. 236; *Hartley* v. *Board of Canvassers*, 205 Mich. 523. Many other cases might be cited. This court, by a long line of decisions, stands firmly committed to the doctrine that laws enacted to preserve the evidence of the exercise of the elective franchise are mandatory."

The official indorsement prescribed by this act is concededly to preserve the integrity of the ballots, and is mandatory. It cannot be successfully contended that indorsing them with a common lead pencil instead of with ink or an indelible pencil, for future identification and to preserve their integrity as cast in case it became necessary to resort to a recount, would serve that purpose with equal verity or be considered "just as good." After enacting laws which tested it both ways the legislature manifestly decided it was not, and prohibited use of a deleble pencil, plainly declaring the consequences of ignoring the prohibition.

The judgment will stand affirmed.

WIEST, C. J., and FELLOWS, McDONALD, CLARK, BIRD, SHARPE, and MOORE, JJ., concurred.