CAVANAGH, J.
{dissenting). Today, the majority finds no ambiguity in the statutory provision at issue and, in so doing, ignores the true intent of the Legislature. Because I believe the true intent of the Legislature must be given effect, I respectfully dissent. The majority, apparently frustrated with my refusal to follow its lead and use a dictionary while turning a blind eye to reality, has issued a lengthy response to this dissent. While the majority asserts that I substitute my own policy preferences for those of the Legislature, I think it is necessary to note the following in regard to the majority’s approach: “A method of statutory interpretation that is deliberately uninformed, and hence unconstrained, increases the risk that the judge’s own policy preferences will affect the decisional process.” *174 Bedroc Ltd, LLC v United States, 541 US_,_; 124 S Ct 1587, 1598; 158 L Ed 2d 338 (2004) (Stevens, J., dissenting).
This case requires us to examine MCL 247.183 to determine whether defendant Wolverine Pipe Line Company (Wolverine) must obtain permission from plaintiff city of Lansing to construct a gas pipeline longitudinally in the right-of-way of an interstate highway within the city limits. The majority finds no ambiguity in the statute and, thus, holds that Wolverine must obtain local consent before constructing the pipeline. I, on the other hand, believe that the statute is ambiguous and turn to the legislative history accompanying the statute to discern the Legislature’s true intent. A review of the legislative history indicates that the Legislature’s intent was to create a streamlined permit system that would not require consent from each municipality a pipeline crosses. On the bases of the history of the statute itself and of the legislative history recorded when the statute was enacted, I would hold that Wolverine is not obligated to obtain local consent.
I agree with the majority that this case involves principles of statutory construction and that in construing a statute, we are required to give effect to the Legislature’s intent. I also agree that legislative intent must be gleaned from the statutory text if the language is unambiguous. However, when a statute is ambiguous, judicial construction is necessary to determine its meaning. In re MCI, 460 Mich 396, 411; 596 NW2d 164 (1999).
A statute is ambiguous when reasonable minds can differ regarding its meaning. Id. My dissent in Yellow Freight Sys, Inc v Michigan, 464 Mich 21, 38; 627 NW2d 236 (2001) (CAVANAGH, J., dissenting), rev’d 537 US 36; 123 S Ct 37; 151L Ed 2d 377 (2002), vacated and *175 remanded 468 Mich 862; 659 NW2d 229 (2003), on remand 257 Mich App 602; 669 NW2d 553 (2003), outlined the generally accepted method for making an ambiguity determination.
[W]hen there can be reasonable disagreement over a statute’s meaning, see People v Adair, 452 Mich 473, 479; 550 NW2d 505 (1996), or, as others have put it, when a statute is capable of being understood by reasonably well-informed persons in two or more different senses, that statute is ambiguous. See 2A Singer, Statutes & Statutory Construction (6th ed), § 45.02, pp 11-12.
While the majority in Yellow Freight expressly disagreed with my determination that the statute was ambiguous,[1] the United States Supreme Court reversed the decision of the majority and held that the statute was ambiguous. Yellow Transportation, Inc v Michigan, 537 US 36, 46; 123 S Ct 371; 154 L Ed 2d 377 (2002).
My dissent in Yellow Freight collected cases where this Court has found statutes ambiguous.
[T]his Court has concluded that statutes have been ambiguous when one word in the statute has an unclear meaning, see Perez v Keeler Brass Co, 461 Mich 602, 610; 608 NW2d 45 (2000), when a statute’s interaction with another statute has rendered its meaning unclear, see People v Denio, 454 Mich 691, 699; 564 NW2d 13 (1997), or when application of the statute to facts has rendered the *176 correct application of the statute uncertain, see Elias Bros v Treasury Dep’t, 452 Mich 144, 150; 549 NW2d 837 (1996). [464 Mich 38.]
In this case, application of the statute to the facts has rendered the correct application of the statute uncertain.
MCL 247.183, in pertinent part, reads:
(1) . .. public utility companies ... may enter upon, construct, and maintain ... pipe lines . .. upon, over, across, or under any public road, bridge, street or public place, including, subject to subsection (2), longitudinally within limited access highway rights of way, and across or under any of the waters of this state, with all necessary erections and fixtures for that purpose. A. .. public utility company ... , before any of this work is commenced, shall first obtain the consent of the governing body of the city . . . through or along which these lines and poles are to be constructed and maintained.
(2) A utility as defined in 23 C.F.R. 645.105[] may enter upon, construct, and maintain utility lines and structures longitudinally within limited access highway rights of way in accordance with standards approved by the state transportation commission that conform to governing federal laws and regulations.
The majority’s statutory analysis begins and ends with the dictionary definition of “subject to.” The majority concludes that “subject to” does “not mean that the requirements of subsection 1 do not apply to those utilities that are covered also by subsection 2.” Ante at 160. While the majority uses a double negative to hedge, I think the more direct statement to be gleaned from the inclusion of “subject to” in subsection 1 and its conspicuous absence from subsection 2 is that subsection 2 utilities may not be “subject to” the requirements of subsection 1. Because subsection 2 utilities are a specific group of federally defined utilities *177 that are subject to regulations beyond those imposed on the broad general utilities in subsection 1,1 think it’is fair to say that the Legislature may have intended to create a regulatory scheme specific to the more-regulated entities.
Thus, it is unclear whether the requirement in subsection 1, that public utility companies must obtain local consent, applies to a utility, as defined in subsection 2. When reading subsection 1 alone it appears that all public utilities must obtain local consent before constructing pipelines in any public place. When reading subsection 2 alone, however, it appears that federally defined utilities may construct pipelines longitudinally within limited access highway rights-of-way as long as they comply with the applicable state standards. When the two sections are read together, it is unclear whether subsection 2 utilities must comply with the local consent requirement in subsection 1.
“It is a well-established rule of statutory construction that provisions of a statute must be construed in light of the other provisions of the statute to carry out the apparent purpose of the Legislature.” Farrington v Total Petroleum, Inc, 442 Mich 201, 209; 501 NW2d 76 (1993). Here, the majority fails to construe subsection 1 in light of subsection 2 and, thus, concludes that the statute is not ambiguous.
I cannot agree that the meaning of MCL 247.183 is clear and unambiguous. A statute is ambiguous if there can be reasonable disagreement over the statute’s meaning. In re MCI, supra at 411. The meaning of this statute is subject to reasonable disagreement. There is a reasonable argument that subsection 2 imposes requirements, in addition to those imposed by subsection 1, on utilities that meet the definition of utility in 23 CFR 645.105, and that are looking to construct lines *178 longitudinally within limited access highway rights-of-Way. Under this reading of the statute, subsection 2 utilities would be required to obtain local consent.
However, there is also a reasonable argument that subsections 1 and 2 apply to different entities and that subsection 2 entities are excepted from the requirements of subsection 1. Because there are at least two reasonable interpretations of MCL 247.183, the statute is ambiguous.
When a statute is ambiguous, judicial construction is appropriate. In re MCI, supra at 411. As previously stated, it is a maxim of statutory construction that “provisions of a statute must be construed in light of the other provisions of the statute.. . .” Farrington, supra at 209. In construing subsection 1 in light of subsection 2, I find that the Legislature intended to create a special process for federally defined utilities that wish to construct pipelines longitudinally within limited access highway rights-of-way.
The statutory and legislative history further supports the conclusion that the Legislature did not intend for federally defined utilities, such as Wolverine, to have to obtain local consent before constructing pipelines longitudinally in limited access highway rights-of-way. When the statute governing construction and maintenance of pipelines was originally enacted in 1925, it did not address longitudinal rights-of-way.[2] Until 1988, *179 longitudinal use of interstate highway rights-of-way required a permit from the Federal Highway Administration. In 1988, the federal regulations were amended to allow use of longitudinal rights-of-way in accordance with federal regulations if such use was permitted by the state. See 23 CFR 645.105.
The Michigan statute was amended in 1989 to reflect this change. 1989 PA 215. The phrase “except longitudinally within limited access rights of way” was added to subsection 1, and the Legislature also added subsection 2 to the statute.[3] Essentially, MCL 247.183(1) provided that certain entities were authorized to construct pipelines upon, over, across, or under any public place, except within limited access highway rights-of-way. In other words, according to subsection 1, Michigan generally did not allow longitudinal use of limited access highway rights-of-way. While general use was *180 prohibited by subsection 1, subsection 2 allowed federally defined utilities to obtain a permit to use the rights-of-way.
In 1994, the statute was amended again. 1994 PA 306. The focus of the 1994 amendments was ensuring that it was feasible for utilities to construct in limited access highway rights-of-way. To this end, the fees that could be charged for longitudinal use of limited access highway rights-of-way were adjusted and the nature of the permit system was altered by changing the phraseology of subsection 1. In pertinent part, Senate Bill 1008 looked like this:
Sec. 13. (1) Telegraph, telephone, power, and other public utility companies, and cable television companies, and municipalities are- authorized to MAY enter upon, construct and maintain telegraph, telephone, or power lines, pipe lines, wires, cables, poles, conduits, sewers and like OR SIMILAR structures upon, over, across, or under any public road, bridge, street, or public place, except INCLUDING, SUBJECT TO SUBSECTION (2), longitudinally within limited access highway rights of way....
Notably, the word “except” was replaced with the phrase “including, subject to subsection (2).” In other words, the 1994 statutory amendment changed Michigan from a state that generally did not allow entities to use limited access highway rights-of-way, at least not without a permit, to a state that generally does allow use of limited access highway rights-of-way, even though that use is subject to the requirements contained in subsection 2.
Before the 1994 amendments, subsection 1 permitted pipeline construction in public areas, but prohibited construction within limited access highway rights-of-way. Subsection 1 also required local consent. Subsection 2, on the other hand, allowed the state Department *181 of Transportation to issue permits to federally defined utilities to construct pipelines within limited access highway rights-of-way. After the 1994 amendments, subsection 1 still permits construction in public areas, but it also provides that entities may construct pipelines longitudinally within limited access highway rights-of-way. The second sentence of subsection 1 still requires utilities to obtain local consent. Subsection 2 now states that a utility may construct within limited access highway rights-of-way if the utility pays a fee and conforms to state standards that comport with the federal standards; it no longer requires a state permit from the Department of Transportation.
While the history of the statute and the amendments themselves provide some insight into the Legislature’s intent, the legislative analyses and the documents contained in the House and Senate committee files provide even more insight. I recognize that this Court has held that “a legislative analysis is a feeble indicator of legislative intent and is therefore a generally unpersuasive tool of statutory construction.” Frank WLynch & Co v Flex Technologies, Inc, 463 Mich 578, 587; 624 NW2d 180 (2001). However, this Court more recently recognized
the benefit of using legislative history when a statute is ambiguous and construction of an ambiguous provision becomes necessary. Stajos v City of Lansing, 221 Mich App 223; 561 NW2d 116 (1997); People v Hall, 391 Mich 175; 215 NW2d 166 (1974); Liquor Control Comm v Fraternal Order of Eagles, Aerie No 629, 286 Mich 32; 281 NW 427 (1938).... Examples of legitimate legislative history include ... actions of the Legislature in considering various alternatives in language in statutory provisions before settling on the language actually enacted. See, e.g, Miles ex rel Kamferbeek v Fortney, 223 Mich 552, 558; 194 NW 605 (1923).... By comparing alternative legislative drafts, a court may be able to discern the intended meaning for the *182 language actually enacted. [In re Certified Question (Kenneth Henes Special Projects Procurement, Marketing and Consulting Corp v Continental Biomass Industries, Inc), 468 Mich 109, 115 n 5; 659 NW2d 597 (2003).]
The “various alternatives in language” examined by the Court in Miles were statutory amendments made over a twenty-six-year period. In that case, this Court found it telling that the Legislature eliminated words in 1917 that were added in 1909 and remained through the 1915 amendment. The amendments were to the general election law, which at the time of the election in question required election inspectors to indorse all ballots “in ink or with indelible pencil.” Miles, supra at 553. This Court concluded that the Legislature’s deletion of the words “or with lead” signified legislative intent to remove the possibility of signature with lead pencils. Id. at 558, 564.
Although the Legislature added and then removed a specific term in Miles, that was not the case here. In this case, the Legislature did not eliminate the possibility of constructing pipelines longitudinally within limited access highway rights-of-way; rather, it subjected such construction to the requirements of subsection 2 only.
It is clear from both the text of the statute and the legislative analysis of the 1989 amendment that the 1989 amendment was intended to eliminate local control. Subsection 1 of the 1989 amendment prohibited construction within limited access highway rights-of-way. Thus, the local consent requirements of subsection 1 clearly did not apply to the prohibited actions. See also Senate Legislative Analysis, HB 4767, October 11,1989 (“The bill would amend Public Act 365 of 1925 ... to authorize the Department of Transportation, rather than local governing bodies, to permit the longitudinal *183 construction of utility lines ... within limited access highway rights-of-way.”)
However, the 1989 amendment of MCL 247.183 is not the language at issue because the most recent amendment of the statute was the 1994 amendment. While the statute does not clearly indicate whether the Legislature intended to require federally defined utilities to obtain local consent, it appears that this lack of clarity is the result of a clerical error and the intent was not to reverse the 1989 elimination of local control. The legislative analysis accompanying the 1994 amendment suggests that the purpose of the amendment was simply to ensure that it was feasible for utilities to use limited access highway rights-of-way. This was accomplished by adjusting the fees for longitudinal use of limited access highway rights-of-way and ensuring that the state standards prevent an increase in highway maintenance costs. See Senate Legislative Analysis, SB 1008, August 3, 1994.
The House and Senate journals provide further support for the notion that the Legislature did not intend the amendment to impose a requirement that federally defined utilities obtain local consent. The journals indicate that SB 1008 was passed without a single “nay” vote in either the House or Senate and the only amendments of the proposed bill were to subsection 2, which deals with the fees to be charged for longitudinal use of limited access highway rights-of-way. 1994 Journal of the Senate 1558,1578; 1994 Journal of the House 1639, 1978-1979.
In addition to the journals, the standing committee records from the Senate Technology and Energy Committee and the discussions regarding the bill on the Senate floor also provide support for the notion that the Legislature did not intend to subject federally defined *184 utilities to the local consent requirement. The Senate Committee on Technology and Energy held a committee hearing on March 23, 1994. Included in the committee records are the Senate Legislative Analysis, an analysis of the Senate Majority Policy Office, and written testimony of General Telephone and Electronics and the Michigan Department of Transportation.
The analysis from the Senate Majority Policy Office states, “Senate Bill 1008 would amend current law to permit a utility to enter and construct utility services along the longitudinal axis of a limited access highway using standards adopted by the State Transportation Commission. The amendatory language would also eliminate the ability of the state to deny access to these locations for construction of utility services.”
Senate Bill 1008, which resulted in the 1994 amendments of the act, was introduced by Senator Hoffman. SB 1008 was introduced on February 8, 1994, and sent on to the House of Representatives on April 26, 1994. On June 12, 1994, the bill returned from the House to the Senate with minor amendments and Senator Hoffman explained the bill on the Senate Floor before a vote. He explained that the House of Representatives made two amendments to the bill concerning the fee structure for constructing in limited access highway rights-of-way. He conveyed that the Department of Transportation and the major state utilities concurred in the changes and he urged the Senate members to concur as well. Audio Tape: Michigan State Senate Session (June 21, 1994) (on file at the State of Michigan Archives).[4]
*185 If the amendment were meant to remove the state’s power to deny access to these locations, it certainly could not have been meant to grant this power to local entities, thus making it more cumbersome and maybe even impossible to construct within limited access highway rights-of-way. After reviewing the language used in the statute and the legislative history, I cannot believe that the Legislature intended to subject federally defined public utilities to local consent requirements.
Because I believe that the statute is ambiguous and the true legislative intent was not to require local consent when federally defined utilities wish to construct pipelines longitudinally within limited access highway rights-of-way, I must respectfully dissent.
KELLY, J., concurred with CAVANAGH, J.

 In fact, the majority made the same argument in Yellow Freight that they assert here:
The dissent contends that the statute is ambiguous, asserting that this is demonstrated by “the several interpretations of its wording advanced by the parties.” If the parties’ conflicting interpretations were the measure of a statute’s ambiguity, then almost every statute litigated would be deemed ambiguous. A statute is not ambiguous because it requires careful attention and analysis. [Yellow Freight, supra at 30 n 12.]

 Section 13 of 1925 PA 368 provided, in pertinent part:
Telegraph, telephone, power and other public utility companies and municipalities are' authorized to enter upon, construct, and maintain ... pipe lines ... upon, over, across, or under any public road, bridge, street or public places and across or under any of the waters in this state, with all the necessary erections and fixtures therefor: Provided that every such . .. public utility company . .. before any of the work of such construction and erection shall be *179 commenced, shall first obtain the consent of the duly constituted authorities of the city, village, or township through or along which said lines and poles are to be constructed and erected.

 When subsection 2 was added in 1989, it read:
The state transportation department may permit a utility as defined in 23 CFR 645.105(m) to enter upon, construct, and maintain utility lines and structures longitudinally within limited access highway rights of way in accordance with standards approved by the state transportation commission. Such fines and structures shall be underground or otherwise constructed so as not to be visible. The standards shall conform to governing federal laws and regulations and may provide for the imposition of a reasonable charge for longitudinal use of limited access highway rights of way. The imposition of a reasonable charge constitutes a governmental function, offsetting a portion of the capital and maintenance expense of the limited access highway, and is not a proprietary function. All revenue received under this subsection shall be used for capital and maintenance expenses incurred for limited access highways.

 Without stating what is missing from my alleged recitation of “various random facts,” the majority asserts that this dissent is tinder-inclusive. Ante at 164. A few breaths later, however, the majority asserts *185 that I have included a useless “bit of legislative history.” Ante at 170.1 am at a loss for how to respond to a majority that wants everything and nothing at the same time.