LaGUIRE v KAIN

WARANICA v CHEERS GOOD TIME SALOONS, INC

Docket Nos. 89871, 90657. Argued December 3, 1991 (Calendar Nos. 6-7). Decided July 29, 1992.

    Betty J. LaGuire, as personal representative of the estate of Michael J. Mihailuk, a deceased minor, and Michael G. and Janet S. Mihailuk, the decedent's parents, brought a dramshop action in the Genesee Circuit Court against William J. Kain, a tavern owner, alleging that he wrongfully served alcohol to the decedent who subsequently drove his car over the center line of a road and collided head-on with another vehicle. The court, Philip C. Elliott, J., granted summary disposition for the defendant, finding that the dramshop act, as amended, precludes a noninnocent party, including a minor, from recovering damages. The Court of Appeals, Sawyer, P.J., and Michael J. Kelly and Murphy, JJ., reversed, holding that both the minor's estate and the minor's family were able to sue under the amended act (Docket No. 115325). The Court certified that its decision conflicted with *Rosas v Damore,* 171 Mich App 563 (1988), and *Saavedra v Ghannan,* 183 Mich App 234 (1989). The defendant appeals.

    Thomas and Barbara Waranica, the parents of Deborah Waranica, a deceased minor, and two siblings brought a dramshop action in the Kent Circuit Court against Cheers Good Time Saloons, Inc., claiming that the licensee unlawfully served alcohol to the decedent who also subsequently drove her car on the wrong side of a state highway and collided head-on with another car. The court, Roman J. Snow, J., denied the defendant's motion for summary disposition. The Court of Appeals, Maher, P.J., and Sullivan and Reilly, JJ., affirmed, concluding that under the amended act, even though the minor's suit was precluded by the noninnocent party doctrine, the family's suit was permissible (Docket No. 118556). The defendant appeals.

    In an opinion by Justice Brickley, joined by Chief Justice

References

Am Jur 2d, Intoxicating Liquors §§ 593-594.

See the Index to Annotations under Alcholics and Alcoholism; Children; Dram Shop Acts; Intoxicating Liquors.

CAVANAGH, and Justices LEVIN, RILEY, and GRIFFIN, the Supreme Court *held:*

The 1986 PA 176 amendments of the dramshop act bar both an imbibing minor's estate and the family of the minor from recovery under the act.

1. MCL 436.22(4); MSA 18.993(4), as amended, does not provide an imbibing minor's estate with a cause of action. Subsection 4 applies to three distinct categories of persons: "individuals" who suffer damage or are personally injured, including their spouses, children, parents, or guardians; minors and visibly intoxicated persons who damage or personally injure "individuals"; and persons who, by selling, giving, or furnishing alcoholic liquor, have caused or contributed to the intoxication of the person or have caused or contributed to the damages, injury, or death, against whom the "individuals," spouses, parents, etc., in the first category have a cause of action under the act. Because an intoxicated minor is not an "individual" who suffers damage or is personally injured by a minor or visibly intoxicated person, neither the minor nor the minor's estate has a cause of action under the act.

2. Members of an imbibing minor's family who are not "individuals" pursuant to subsection 4 have no cause of action. Because an intoxicated minor does not qualify as an "individual" under subsection 4, neither do members of the minor's family qualify as parents, guardians, etc., of an "individual" as used in the subsection. In order to have a cause of action, the relatives of an imbibing minor, themselves, must qualify as "individuals." The amended wording of subsection 4 indicates the Legislature's shift in emphasis from protecting the family of an habitual drunkard to protecting third persons. This emphasis does not support the conclusion that the Legislature intended the term "individual" to apply to the members of an intoxicated minor's family. While the Legislature retained a cause of action for certain relatives, it carefully specified that only the relatives of an "individual," as used in subsection 4, could recover. To allow members of a minor's family to recover as "individuals" would be contrary to the Legislature's expressed intent and would also significantly increase the number of potential plaintiffs, a result that is inconsistent with the Legislature's creation of a narrowly tailored right and remedy unknown at common law. Clearly the Legislature could not have intended the family of an intoxicated minor to enjoy a greater potential for recovery than the narrowly delineated classes of relatives of an "individual," when the minor does not have a cause of action. This interpretation of subsection 4 is

consistent with the literal wording of subsections 6 and 8 in the use of the term "minor," and is not inconsistent with subsection 10.

Reversed.

Justice Boyle, joined by Justice Mallett, concurring in part and dissenting in part, stated that although a minor's estate has no cause of action under Michigan's Liquor Control Act, as amended in 1986, the statute does not contain language that specifically suggests that the family members of an imbibing minor ought not be deemed individuals who suffer damage as a result of the minor's having unlawfully obtained alcoholic liquor. The majority's conclusion requires the assumption that the Legislature indirectly eliminated an historically recognized cause of action through the subsection authorizing claims, while omitting clear language in the exception clause that would have directly accomplished the same result. The amended wording of subsection 4 permits an individual, including a family member of an imbibing minor, to recover.

185 Mich App 239; 460 NW2d 598 (1990) reversed.

186 Mich App 398; 464 NW2d 902 (1990) reversed.

Intoxicating Liquors — Dramshop Actions — Imbibing Minors — Minors' Estates — Minors' Families.

Recovery by the estate or family of an imbibing minor is barred under the dramshop act (1986 PA 176, MCL 436.22 et seq.; MSA 18.993 et seq.).

*Rizik & Zintsmaster, P.C.* (by *Michael B. Rizik, Jr.*), and *Bueche & Failer* (by *Patrick J. O'Callaghan*) for the plaintiffs in *LaGuire.*

*Verspoor, Waalkes, Lalley & Slotsema, P.C.* (by *Daniel J. Slotsema*), for the plaintiffs in *Waranica.*

*Robert P. Keil* for the defendant in *LaGuire.*

*Frank S. Spies* and *Kallas, Lower, Henk & Treado, P.C.* (by *Constantine N. Kallas*), for the defendant in *Waranica.*

Amici Curiae:

*Kallas, Lower, Henk & Treado, P.C.* (by

*Constantine N. Kallas* and *Robert P. Hurley*), for Michigan Licensed Beverage Association, Michigan Licensed Beverage Association Limited Liability Pool, Bowling Centers Association of Michigan, Bowling Proprietors of Michigan Limited Liability Pool, Northpointe Insurance Company, First Security Insurance Company, and Sourceone Insurance Company.

BRICKLEY, J. The question presented in these companion cases is whether Michigan's Liquor Control Act, as amended in 1986,[1] entitles a minor's estate or a minor's family to recover from a liquor licensee for injuries allegedly resulting from the licensee's illegal provision of alcohol to a minor. We hold that the 1986 amendments of the dramshop act bar both a minor's estate and the family of that minor from recovery under the act. Therefore, we reverse the decisions of the Court of Appeals in *Waranica v Cheers Good Time Saloons, Inc,* 186 Mich App 398; 464 NW2d 902 (1990), and *LaGuire v Kain,* 185 Mich App 239; 460 NW2d 598 (1990).

I

Each of these cases arises out of an automobile collision that occurred after the defendant liquor licensee allegedly illegally served alcohol to the driver of a vehicle, a minor, who became intoxicated, caused a collision resulting in the minor's death, and injured others.

A

In *LaGuire v Kain,* the plaintiff's decedent, Michael John Mihailuk, then seventeen, purport-

---

[1] 1986 PA 176, MCL 436.22 *et seq.*; MSA 18.993 *et seq.*

edly used an altered driver's license to purchase alcoholic beverages from the defendant liquor licensee, William James Kain, doing business as Copa Nite Club. After leaving the bar, the decedent drove his car across the center line and collided head-on with another vehicle, injuring the driver, Lisa Lord, and killing himself. Lisa Lord sued Betty Jane LaGuire, personal representative of the estate of the decedent, Michael John Mihailuk, and his parents, Michael Grant Mihailuk and Janet Sue Mihailuk. The defendants in the original suit, the minor's estate and parents, filed cross-claims against the liquor licensee. After Lisa Lord, the original plaintiff, settled with the minor's estate and family and gave up her claim against the licensee, the trial court realigned the parties and ordered a revised caption, which represented the original defendants, the minor's estate and his family, as plaintiffs, and the licensee as the defendant.[2]

The defendant licensee moved for summary disposition on the basis that the statute failed to create a cause of action in favor of plaintiffs. Relying on *Cornack v Sweeney,* 127 Mich App 375; 339 NW2d 26 (1983), the defendant argued that no cause of action existed in favor of the minor or his estate before the 1986 amendments and that the 1986 amendments of the statute created no cause of action in their favor. In response, the plaintiffs focused on subsection 10 of the dramshop act, MCL 436.22(10); MSA 18.993(10). In analyzing that provision, the plaintiffs relied on *Stowers v Wolodzko,* 386 Mich 119; 191 NW2d 355 (1971), for the rule of statutory construction providing that the expres-

---

[2] The minor's estate and the minor's parents also filed cross-claims against another defendant, Charles Baker Scott, III, on the ground that he had supplied the decedent with alcohol. When the parties were realigned and the caption restructured, the third-party defendant was listed as a defendant. He is not involved in this appeal.

sion of one thing in a statute excludes the inclusion of other similar things. Plaintiffs claimed that because neither the minor nor the minor's family were specifically mentioned in subsection 10, which barred actions by visibly intoxicated persons, the statute was not intended to bar their claims. The trial court agreed with the plaintiffs.

The defendant filed a motion for reconsideration, noting that *Rosas v Damore,* 171 Mich App 563; 430 NW2d 783 (1988), had been released after argument of the defendant's motion for summary disposition. The defendant contended that *Rosas* had interpreted the amended statute to preclude a noninnocent party, including a minor, from recovering damages under the statute. In response, the plaintiffs sought to undermine the authority of *Rosas* by suggesting that it erroneously relied on *Longstreth v Gensel,* 423 Mich 675; 377 NW2d 804 (1985), a case involving common-law liability of social hosts and not applicable to dramshop liability under the statute. Concluding that it was bound by *Rosas,* the trial court granted the motion for reconsideration and granted summary disposition for the defendant with respect to the claims of the minor's estate and the claims of the minor's parents.

The Court of Appeals reversed, holding that both the minor's estate and the minor's family were entitled to sue under the amended statute.[3] Noting that before the 1986 amendments the actions would have been barred, the Court of Appeals examined the language and structure of the

---

[3] The Court of Appeals consolidated *LaGuire v Kain* with *Falker v Hanibal's, Inc* (Docket No. 117778), an unrelated cause of action involving a seriously injured minor who claimed he had purchased alcoholic beverages from the defendant without providing identification and who sought damages for his injuries. The parties settled their dispute and stipulated to request that this Court dismiss their appeal prior to oral argument.

amended statute in light of several rules of construction, concluding that both a minor and the minor's family could sue. The Court then certified that its opinion conflicted with *Rosas v Damore, supra,* and *Saavedra v Ghannan,* 183 Mich App 234; 454 NW2d 134 (1989).

We granted leave to appeal. 437 Mich 1046 (1991).

B

In *Waranica v Cheers Good Time Saloons, Inc,* the parents of decedent Deborah Waranica, Thomas and Barbara Waranica, and two siblings, Colleen and John Waranica, sued a liquor licensee, Cheers Good Time Saloons, claiming that the licensee unlawfully sold, gave or furnished alcohol to Deborah Waranica, a minor, before her death in a car accident on April 10, 1987. The plaintiffs claimed that, as a result of her intoxication, Deborah Waranica drove her car on the wrong side of a state highway and collided head-on with another car.

The defendant unsuccessfully sought summary disposition, contending that MCL 436.22 *et seq.*; MSA 18.993 *et seq.* did not provide a cause of action for the family of a minor who had been illegally served alcohol. The Court of Appeals granted the defendant leave to appeal the trial court's order denying summary disposition.

The Court of Appeals affirmed the trial court's ruling, deciding that the minor's family had a cause of action under the amended statute. The Court of Appeals took as its starting point the traditional interpretation of the dramshop act that precluded the intoxicated person's action, the non-innocent party doctrine. It then examined the 1986 amendments to see whether the language

changed prior law to give the imbiber a cause of action. Disagreeing with the *LaGuire* Court's rationale, the *Waranica* Court concluded that the Legislature did not intend to allow minors who are noninnocent parties to sue. Reviewing the effect of changes in subsections 4, 6, 8, and 10, the Court concluded that, although the minor's suit was precluded by the noninnocent party doctrine, the family's suit was permissible.

This Court granted the defendant leave to appeal and ordered that the case be argued and submitted to the Court together with *LaGuire v Kain.* 437 Mich 1046 (1991).

II

The dramshop act[4] occupies the field of liability arising out of the selling, giving or furnishing of alcoholic liquor to minors or visibly intoxicated persons. *Jackson v PKM Corp,* 430 Mich 262, 279; 422 NW2d 657 (1988). In enacting the dramshop act, the Legislature created a new remedy, not available at common law, and "provided a specific action with which to achieve that remedy." *Browder v Int'l Fidelity Ins Co,* 413 Mich 603, 613; 321 NW2d 668 (1982). This Court previously acknowledged that the Legislature has attempted to keep the act internally balanced, *id.* at 614, resulting in a "complete and self-contained solution to a social problem not adequately addressed at common law." *Id.* at 615. Therefore, in interpreting the various provisions of the dramshop act, this Court must reconcile seeming inconsistencies, if possible, in order to give a common effect to the entire act that is consistent with the Legislature's intent. *In re State Hwy Comm,* 383 Mich 709, 714; 178 NW2d 923 (1970).

---

[4] Section 22 of the Liquor Control Act, 1933 (Ex Sess) PA 8, as amended by 1986 PA 176, MCL 436.22 *et seq.*; MSA 18.993 *et seq.*

Statutory interpretation analysis must begin with an examination of the words chosen by the Legislature. Subsection 4 of the dramshop act, as amended in 1986, sets forth the persons entitled to bring a cause of action:

> Except as otherwise provided in this section, *an individual* who suffers damage or is personally injured by a minor or visibly intoxicated person by reason of the unlawful selling, giving, or furnishing of alcoholic liquor to the minor or visibly intoxicated person, if the unlawful sale is proven to be a proximate cause of the damage, injury, or death, *or the spouse, child, parent, or guardian of that individual,* shall have a right of action in his or her name against the person who by selling, giving, or furnishing the alcoholic liquor has caused or contributed to the intoxication of the person or who has caused or contributed to the damage, injury, or death. [MCL 436.22(4); MSA 18.993(4). Emphasis added.]

Before its amendment in 1986, the dramshop act provided:

> A wife, husband, child, parent, guardian, or other person injured in person, property, means of support, or otherwise, by a visibly intoxicated person by reason of the unlawful selling, giving, or furnishing of intoxicating liquor to the person, if the sale is proven to be a proximate cause of the injury or death, shall have a right of action in his or her name against the person who by the selling, giving, or furnishing the liquor has caused or contributed to the intoxication of the person or who has caused or contributed to the injury. [Subsection 22(5) of the Michigan Liquor Control Act, 1980 PA 351.]

A

The first question we address is whether the

amended wording of subsection 4 provides an imbibing minor's estate with a cause of action. We conclude that it does not.

Before the 1986 amendments to the dramshop act, former subsection 5 set forth the parties who were entitled to recover for injuries proximately caused by the selling, giving or furnishing of intoxicating liquor to a visibly intoxicated person. Under the former wording, the enumeration of the parties who could recover included "[a] wife, husband, child, parent, guardian, or *other person* injured in person, property, means of support, or otherwise, by a visibly intoxicated person . . . ." 1980 PA 351, § 22(5) (emphasis added).

Construing substantially similar language in *Brooks v Cook,* 44 Mich 617, 618-619; 7 NW 216 (1880), this Court considered whether the intoxicated person could recover under the act. We noted that the intoxicated person "may generally be supposed to be injured in some degree by intoxication, so that his case would furnish the most frequent occasion for a suit if he should see fit to resort to legal proceedings." *Id.* We concluded, however, that although the intoxicated person could be included within the scope of the words "other person," had the Legislature intended to benefit the intoxicated person it would have expressed its intention distinctly and unequivocally. *Id.* Therefore, this Court held that an intoxicated person did not have a cause of action under the act as previously worded. The judicially created "noninnocent party doctrine," first adopted in the *Brooks* case, has been applied consistently to bar recovery by an intoxicated person under the dramshop act since 1880.

The plaintiffs concede that before the 1986 amendments of the act an intoxicated person had

no cause of action. However, the plaintiffs argue that the new language of subsection 4, creating a class of plaintiffs referred to as "individuals" and certain relatives of those "individuals," broadened the class of persons who could recover to include a minor or his estate. The defendants assert that the new language of subsection 4 precludes a suit by an imbibing minor or that minor's estate because an imbibing minor is not an individual who suffers damage or is personally injured by a minor or a visibly intoxicated person. We agree with the defendants that neither an imbibing minor nor that minor's estate has a cause of action under the dramshop act, as amended in 1986. While the former wording of the act left some question whether an intoxicated person could recover, because of the Legislature's inclusion of the words "other person" in its enumeration of the persons who may sue under the act, subsection 4 now leaves no doubt that an imbibing minor may not recover.

Subsection 4, as amended, divides the persons at issue under the act into three distinct categories: 1) "individual[s] who suffer[ ] damage or [are] personally injured," as well as the spouses, children, parents, or guardians of *those* individuals, all of whom are given a cause of action; 2) minors and visibly intoxicated persons who damage or personally injure "individuals"; and 3) persons who, by selling, giving, or furnishing alcoholic liquor, have caused or contributed to the intoxication of the person or have caused or contributed to the damages, injury, or death, against whom the "individuals" and spouses, parents, etc., in the first category have a cause of action under the act. Thus, in order to recover under the dramshop act, as amended, a person must qualify as an "individual" or the "spouse, child, parent, or guardian of that

individual." Clearly, an imbibing minor falls into the category of those persons who injure, rather than those who are *injured by* a minor or visibly intoxicated person, referred to in subsection 4 as "individuals." Therefore, because an intoxicated minor is not an "individual" who "suffers damage or is personally injured by a minor or visibly intoxicated person . . . ," MCL 436.22(4); MSA 18.993(4), neither the minor nor his estate has a cause of action under the act.

B

Having concluded that the revised language of subsection 4, in its ordinary meaning, does not contemplate recovery by the imbibing party, whether he is a minor or a visibly intoxicated person, we must next determine whether the family of an imbibing minor has a cause of action under the amended act. Because an intoxicated minor does not qualify as an "individual" under subsection 4, neither do members of his family qualify as parents, guardians, etc., of an "individual" as used in that subsection. Therefore, in order to have a cause of action, the relatives of an imbibing minor must qualify as "individuals" themselves. We conclude that recovery by the plaintiffs in the instant cases was not contemplated by the Legislature.

Originally, the emphasis of the dramshop act was placed on recovery by the wives and children of habitual drunkards. The title to 1875 PA 231 read as follows:

> An act to prevent the sale or delivery of intoxicating liquors, wine, and beer, to minors, and to drunken persons, and to habitual drunkards; to provide a remedy against persons selling liquor to husbands or children in certain cases.

Although an intoxicated person was barred from recovery under the former language of the dram-shop act by the noninnocent party doctrine, *Brooks, supra,* early cases allowed the family of an intoxicated person to recover. Most commonly, the wife of an habitual drunkard would sue a liquor seller for loss of her means of support due to the sale of intoxicating beverages to her husband.[5] The original version of the act gave a cause of action to "[e]very wife, child, parent . . . who shall be injured in person or property, means of support, by any intoxicated person, or by means of the intoxication of any person . . . ." 1875 PA 231, § 3.

Although the right of family members of an intoxicated person to recover was clear under the former wording of the act, this Court considered whether strangers to the intoxicated person had a cause of action in *Flower v Witkovsky,* 69 Mich 371; 37 NW 364 (1888). In that case, the plaintiff claimed that the defendant had unlawfully sold whiskey to two minors and that the minors damaged the plaintiff's property by reason of their intoxication. The defendant argued that the only persons entitled to recover under the act were those persons who stood in some relation to the intoxicated person. This Court rejected such a narrow interpretation of the act, reasoning that the Legislature's use of the words "or other person" in its enumeration of possible plaintiffs was intended to cover all persons injured in person or property by intoxicated persons, and specifically was meant to cover just such a case as the one at bar. *Id.* at 373-374.

Thus, under the former wording of the act, the class of possible plaintiffs included both persons

[5] See, e.g., *Kreiter v Nichols,* 28 Mich 496 (1874); *Kehrig v Peters,* 41 Mich 475; 2 NW 801 (1879); *Steele v Thompson,* 42 Mich 594; 4 NW 536 (1880).

related to the intoxicated person and strangers. Further, before the 1986 amendments a plaintiff could recover both for direct personal injury or property damage, as well as for more indirect injury that is dependent on the injury of another person, such as the loss of "means of support, or otherwise." 1980 PA 351, § 22(5). The "or otherwise" language would encompass such injuries as loss of services, parental training, guidance or companionship, etc. The former version of the act did not distinguish between the different classes of plaintiffs with regard to the kind of injury for which each could recover.

In contrast, the new wording of subsection 4 separates the persons who have a cause of action into two distinct classes. First, an "individual" who suffers damage or is personally injured by a minor or visibly intoxicated person is given a cause of action. MCL 436.22(4); MSA 18.993(4). Further, the spouse, child, parent, or guardian of *that* "individual" may also recover. *Id.* Thus, as under the wording of the former act, both persons who are directly injured by an intoxicated person, and persons whose injuries are more indirect and dependent upon another person's injury, such as the loss of means of support, may recover. However, under the amended wording, the pool of potential plaintiffs who have a cause of action for indirect injury has been significantly narrowed to include only the spouse, child, parent, and guardian of an injured "individual."

The amended wording of subsection 4 indicates the Legislature's shift in emphasis from protecting the family of an habitual drunkard to protecting third persons. This new emphasis on recovery by third persons, as opposed to recovery by the family of an intoxicated person, does not support the conclusion that the Legislature intended the term

"individual" to apply to the members of an intoxicated minor's family. While the Legislature retained a cause of action for certain relatives, the Legislature carefully specified that only the relatives of an "individual," as used in subsection 4, could recover. To allow a minor's family members to recover under the dramshop act as "individuals" would be contrary to the Legislature's expressed intent and would also significantly increase the number of potential plaintiffs, a result that is inconsistent with the Legislature's creation of a narrowly tailored right and remedy unknown at common law. *Browder, supra.*

For example, in order for Michael and Janet Mihailuk to recover, these parents of an intoxicated minor must be "individuals" pursuant to subsection 4. Therefore, according to that interpretation of the revised wording, the Mihailuks' parents, the *grand*parents of the intoxicated minor, also have a cause of action under subsection 4. Likewise, the *siblings* of an intoxicated minor, Colleen and John Waranica, would also have a cause of action as "individuals" under subsection 4, despite the fact that if Colleen and John Waranica were siblings of an injured "individual" they would *not* be able to recover because subsection 4 does not extend a cause of action to the "siblings" of an "individual." Even more absurd, by allowing the relatives of an imbibing minor to recover as "individuals," then *their* spouses, children, parents, and guardians may also recover under the act.

Clearly, the Legislature could not have intended the family of an intoxicated minor to enjoy a greater potential for recovery than the narrowly delineated classes of relatives of an "individual," when the minor himself does not even have a cause of action. The dissent argues that nothing in

the amended wording of subsection 4 supports the
assertion that a family member of a visibly intoxi-
cated person or minor cannot recover as an "indi-
vidual." Boyle, J. at 390. However, if the members
of an intoxicated minor's family may recover as
"individuals" under subsection 4, then *any person*
who suffers indirect injury, whether or not he is
the spouse, child, parent, or guardian of the person
directly injured, would also have a cause of action
as an "individual" under subsection 4.[6] Clearly,
the dissent's construction makes superfluous and
meaningless the *explicit* enumeration in subsec-
tion 4 of the parties other than an "individual"
who may recover.

Neither do we believe that the "legislative his-
tory" cited by the dissent counsels against our
holding that the family of an imbibing minor
cannot recover under subsection 4. See Boyle, J.
at 391-394. While the dissent characterizes the
question whether to allow the minor's family to
recover as a "critical issue" before the conference
committee, there is no indication that such was
the case. Although the dissent describes the "legis-
lative history" as showing that various groups and
individuals focused their lobbying efforts on the
issue what persons would be entitled to sue under
the amended act, the sources cited by the dissent
support the conclusion that the real critical debate
concerned whether the family of *any* intoxicated
person, whether an adult or a minor, would be

---

[6] In fact, the dissent argues that subsection 4 was amended because
the former language was interpreted broadly, even to allow the ex-
wife of a decedent to recover as an "other person." This broad
construction caused confusion and duplicative litigation because
dramshop defendants could not be sure that some additional " 'other
person' " would not bring a claim. Boyle, J. at 389. However, the
dissent's interpretation of subsection 4 defeats the Legislature's pur-
pose of limiting the class of potential plaintiffs by giving to the term
"individual" the same liberal construction that was given to the
words "other person" under the former act.

given a cause of action. See *id.* at 393, n 14. It appears that the Legislature resolved this debate by eliminating, through the new wording of subsection 4, any cause of action for the families of an intoxicated person.

Finally, the dissent's claim that subsection 4 should be read to give an intoxicated minor's family a cause of action, because of the Legislature's continued "special treatment" of minors and their families in other statutory provisions, *id.* at 394, is clearly undercut by the dissent's agreement with our holding that the intoxicated minor, like his adult counterpart the visibly intoxicated person, is barred from recovery under the dramshop act, as amended.

Thus, we believe that the Legislature was quite careful to limit which family members may recover and to whom they must be related in order to have a cause of action. Because we hold that an imbibing minor cannot recover under the act, as amended, we also hold that the family members of that minor, who are not "individuals" pursuant to subsection 4, also have no cause of action.

III

Our holding that neither a minor's estate nor the family of an intoxicated minor may recover under subsection 4 of the dramshop act is supported by the literal wording of other subsections of the act using the term "minor." Subsection 6 provides:

An action under this section against a retail licensee shall not be commenced unless the minor or the alleged intoxicated person is a named defendant in the action and is retained in the action until the litigation is concluded by trial or settlement. [MCL 436.22(6); MSA 18.993(6).]

Because we cannot envision that a minor's estate and the relatives of a minor would have a cause of action *against the minor* for injuring himself, it appears that neither of these parties could satisfy the "name and retain" requirements of subsection 6. See *Scholten v Rhoades,* 67 Mich App 736, 743-744; 242 NW2d 509 (1976).

The Court of Appeals has created an exception to the name and retain requirement on facts similar to those presented in the instant cases. *Scholten, supra.* In *Scholten,* the Court reasoned that because a parent could recover under the dramshop act for injury to a child occasioned by the child's own misdoing, by reason of the sale of intoxicants to that child, a literal application of the name and retain provision would be "awkward, strained and absurd." *Id.* at 744. Whatever persuasiveness the Court of Appeals opinion may have had, the *Scholten* decision predated the 1986 amendments of the dramshop act. As we held above, although the former wording of the act clearly allowed for recovery by the family of an intoxicated person, the new wording of subsection 4 has eliminated such recovery. Therefore, although a literal application of the name and retain requirement would have been strained and absurd in *Scholten,* under the amended version of the statute a literal reading of subsection 6 is entirely consistent with our holding that neither an imbibing minor's estate nor the family of that minor may recover under the dramshop act.

Likewise, our holding is supported by the literal wording of subsection 8, which provides, in pertinent part: "All defenses of the alleged visibly intoxicated person or the minor shall be available to the licensee. . . ." MCL 436.22(8); MSA 18.993(8). Because we cannot envision that a minor's estate and the relatives of a minor would

have a cause of action against the minor for injuring himself, a literal application of subsection 8 means that a cause of action by these plaintiffs against the liquor licensee would also fail.[7] Thus, as with subsection 6, an exception to this subsection is not required to avoid an absurd or strained result because the minor's estate and his family are already barred from suit under subsection 4.[8]

Finally, our holding is also not inconsistent with subsection 10.[9] Subsection 10, on its face, neither eliminates nor preserves recovery under the act by a minor's estate or the family of an intoxicated minor. The plaintiffs urge us to interpret subsection 10 according to the rule of statutory construction that the express mention of one thing in a statute implies the exclusion of others. See 2A Sands, Sutherland Statutory Construction (5th ed), § 47.23, p 216 ff. Subsection 10 purports to establish exclusions from the operation of subsection 4. Thus, the statutory interpretation maxim would indicate that subsection 4 should apply to all cases not specifically excluded in subsection 10. *Id.* at 217. Therefore, under the plaintiffs' interpretation of the two subsections together, both a minor's estate and the family of the minor have a cause of

---

[7] Before the 1986 amendments, this provision only made available to the licensee the *factual* defenses of the alleged intoxicated person or minor. See 1980 PA 351, § 22(5).

[8] The dissent misconstrues our argument with respect to subsections 6 and 8. We do not seek to "indirectly" abolish recovery by an intoxicated minor's family through a literal reading of these subsections. See Boyle, J. at 394, 396, 397. On the contrary, such recovery is barred by subsection 4, and a literal reading of subsections 6 and 8 merely supports our conclusion with respect to subsection 4.

[9]   The alleged visibly intoxicated person shall not have a cause of action pursuant to this section nor shall any person have a cause of action pursuant to this section for the loss of financial support, services, gifts, parental training, guidance, love, society, or companionship of the alleged visibly intoxicated person. [MCL 436.22(10); MSA 18.993(10).]

action under subsection 4 merely because they are not explicitly precluded from recovery under subsection 10. We disagree.

If the wording of subsection 4 were ambiguous, then perhaps the plaintiffs' interpretation of subsection 10 would tip the balance. However, while our holding with regard to subsection 4 appears to make subsection 10 surplusage,[10] the alternative would be to force a construction upon subsection 4 that is not supported by the wording of that subsection merely to explain an absence of language in subsection 10. Further, to divine a legislative intent from the omission of the word "minor" in subsection 10, in order to allow recovery by the minor's estate and his family, creates substantial conflicts between the other subsections of the act. Such a holding would require us to explain away the specific language of subsections 4, 6, and 8, supporting the conclusion that these parties do not have a cause of action. We acknowledge a possible ambiguity arising from the absence of language in subsection 10, yet we decline to adopt the plaintiffs' construction of the act.

We hold that consistent interpretations of subsections 4, 6, and 8 support the conclusion that the Legislature, in its shift of emphasis from protecting the family of an intoxicated person to protecting third persons, intended to prevent recovery by both a minor's estate and the minor's family. Thus, we reverse the decisions of the Court of

---

[10] We note as well that even the dissent's construction of the act makes part of subsection 10 surplusage. The dissent agrees with our holding that the amended wording of subsection 4 does not allow an imbibing minor or visibly intoxicated person to recover. The dissent does not explain why subsection 10 explicitly precludes recovery by a visibly intoxicated person, but does not preclude recovery by a minor. However, the dissent rests its entire conclusion on the theory that those persons not excluded from recovery by subsection 10 may recover under subsection 4. See BOYLE, J. at 391.

Appeals in both *Waranica v Cheers Good Time Saloons* and *LaGuire v Kain.*

CAVANAGH, C.J., and LEVIN, RILEY, and GRIFFIN, JJ., concurred with BRICKLEY, J.

BOYLE, J. (*concurring in part and dissenting in part*). Although we agree with the majority's conclusion that the minor's estate has no cause of action under Michigan's Liquor Control Act, as amended in 1986,[1] we are unable to agree that the family of the minor has no cause of action.

The statute does not contain language that specifically suggests that the family members of an imbibing minor ought not be deemed individuals who suffer damage as a result of the minor's having unlawfully obtained alcoholic liquor. The majority's conclusion requires the assumption that the Legislature indirectly eliminated an historically recognized cause of action through the subsection authorizing claims, while omitting clear language in the exception clause that would have directly accomplished the same result. We cannot agree.

After review of the factors available to assist in construing the statute,[2] we conclude that the

---

[1] 1986 PA 176, MCL 436.22 *et seq.*; MSA 18.993 *et seq.*

[2] Prior opinions of this Court have emphasized the goal to properly interpret and apply the statute in accord with the legislative intent and as articulated by the text. See, e.g., *Karl v Bryant Air Conditioning Co,* 416 Mich 558, 567; 331 NW2d 456 (1982). Careful review of opinions of this Court will reveal a shifting emphasis on intent, purpose, text, context, structure, canons of construction, and other factors depending on the particular case. See, e.g., *Malcolm v East Detroit,* 437 Mich 132, 142-145; 468 NW2d 479 (1991); *Girard v Wagenmaker,* 437 Mich 231, 238-239; 470 NW2d 372 (1991); *Auto Club Ins Ass'n v Hill,* 431 Mich 449, 454-458; 430 NW2d 636 (1988); *Williams v Hofley Mfg Co,* 430 Mich 603, 612-613; 424 NW2d 278 (1988); *BCBSM v Governor,* 422 Mich 1, 13; 367 NW2d 1 (1985); *Owendale-Gagetown School Dist v State Bd of Ed,* 413 Mich 1, 7-10; 317 NW2d 529 (1982); *Arrowhead Development Co v Livingston Co Rd Comm,* 413 Mich 505, 512-519; 322 NW2d 702 (1982). This shifting

amended wording of subsection 4 permits an individual, including a family member of an imbibing minor, to recover. Therefore, we concur with the reversal of the decision of the Court of Appeals in *LaGuire v Kain,* 185 Mich App 239; 460 NW2d 598 (1990), insofar as it pertains to the cause of action of the minor's estate. We dissent in the reversal of *Waranica v Cheers Good Time Saloons, Inc,* 186 Mich App 398; 464 NW2d 902 (1990), and *LaGuire* regarding the existence of a cause of action for the minor's family.

I

As originally constructed, the language in the dramshop act, subsection 5, provided a cause of action to families of intoxicated persons through the enumeration of potential plaintiffs, "[a] wife, husband, child, parent, guardian . . . ." The original language provided a cause of action to third parties through the language "other person." Gradually, "other person" expanded to include various third persons and siblings of the intoxicated person and the enumeration of "wife, husband, child" language was extended to encompass the heirs of an innocent third party.[3] This broad-

emphasis has occurred because neither text, purpose, nor intent is, or can be the sole touchstone of judicial reasoning. The Court has historically adhered to a "modest approach" to statutory construction that is grounded upon "practical reason." See Eskridge & Frickey, *Statutory interpretation as practical reasoning,* 42 Stan L R 321, 322-323 (1990).

[3] See *Hylo v Mich Surety Co,* 322 Mich 568; 34 NW2d 443 (1948) (the Court granted an adult child a cause of action as encompassed within the language providing a claim to "child" or "other person"); *LaBlue v Specker,* 358 Mich 558; 100 NW2d 445 (1960) (an illegitimate child was entitled to recover pursuant to language granting a claim to a "child" or "other person"; *Eddy v Cartwright,* 91 Mich 264; 51 NW 887 (1892) (a parent was entitled to recover for loss of support for the death of her adult child); *O'Dowd v General Motors Corp,* 419 Mich 597; 358 NW2d 553 (1984) (the heir of the deceased may bring a claim under the dramshop act in his individual capacity); *West v*

ening of both aspects of the language eventually caused confusion, and arguably resulted in duplicitous litigation, interfering with dramshop defendants' ability to settle cases because they could not be sure that some additional "other person" might not still bring a claim.

To avoid this, the Legislature reworded subsection 4, eliminating the listing of potential plaintiffs that included the phrase resulting in recognition of a claim for even an ex-wife of a decedent, the "other person."[4] In its place, the Legislature provided that "an individual" or the "spouse, child, parent or guardian of that individual" had a right of action.[5] At the same time, the Legislature made

*Leiphart & Co,* 169 Mich 354; 135 NW 246 (1912) (the Court refused to allow a mother to bring one suit seeking damages for herself and her minor children for the death of their brother, suggesting that separate actions were appropriate); *Brannstrom v Tippman,* 141 Mich App 664, 671; 367 NW2d 902 (1985) (the ex-wife and parents of the deceased victim were entitled to sue as "other person[s]" under the statute).

[4] One set of proposals for reform of the dramshop action suggested options for clarifying the statute. See Rod Brown suggestions, Materials from Dramshop Subcommittee, Senate Select Committee of Civil Justice Reform, State Archives of Michigan. (Rod Brown was president of the Michigan Licensed Beverage Dealers Association.) Notably, the suggestions dealt with two separate issues, those pertaining to "[t]he non-interested party" and those pertaining to "[r]elatives of the non-innocent party." The options recommended for addressing the "non-interested party" included 1) defining a cause of action to include an injured innocent party or the estate of such party under the wrongful death act and the spouse, child, parent, or guardian of the injured innocent party; or 2) restricting eligibility to the injured innocent party or the estate of a deceased injured party under the wrongful death act. The language changes in subsection 4 were intended to implement the first option.

[5] This language closely followed the first option discussed in the suggestions described in n 4. The text of the amended statute is as follows:

Except as otherwise provided in this section, an individual who suffers damage or is personally injured by a minor or visibly intoxicated person by reason of the unlawful selling, giving, or furnishing of alcoholic liquor to the minor or visibly intoxicated person, if the unlawful sale is proven to be a proximate cause of the damage, injury, or death, or the spouse,

several other minor wording changes in subsection 4.[6] Nothing in the revised text supports the assertion that a family member of an intoxicated person or minor might not fall within the category of "individual[s]" who suffer damages or are injured because of the unlawful provision of alcoholic beverages that is the proximate cause of the damages.

Thus, the text of subsection 4 supports the view that family members are entitled to recover. Indeed, the majority concedes that "as under the wording of the former act, both persons who are directly injured by an intoxicated person, and persons whose injuries are more indirect and dependent upon another person's injury, such as the loss of means of support, may recover." (*Ante,* p 380.)

Consideration of the structure of the statute in conjunction with the text of subsection 10, also counsels against the majority's interpretation of the statute. Subsection 4 authorizes recovery for

child, parent, or guardian of that individual, shall have a right of action in his or her name against the person who by selling, giving, or furnishing the alcoholic liquor has caused or contributed to the intoxication of the person or who has caused or contributed to the damage, injury, or death. [MCL 436.22(4); MSA 18.993(4).]

[6] Specifically, the Legislature replaced "injured in person, property, means of support or otherwise" with "who suffers damage or is personally injured." In addition, the Legislature replaced "by a visibly intoxicated person" with "by a minor or visibly intoxicated person." The addition of the word "minor" in the language defining who had a cause of action was designed to eliminate the need to prove that the minor was visibly intoxicated in order to recover. The change apparently was made in response to concerns articulated to Representative Stopczynski, Chair of the House of Representatives Liquor Control Committee, by Patricia J. Knox, then Chair of the Liquor Control Commission. The commission urged the Legislature that the act of selling alcoholic beverages to a minor be sufficient for a cause of action when the sale contributes to or results in death or injury, without also requiring that the minor be visibly intoxicated. State Archives, Bureau of History, Department of State, drafters' folder for 1986 amendments to the dramshop act.

particular persons and categories of persons. Sub-section 10 creates an exception to the categories of persons entitled to sue under subsection 4. Thus, the class created in subsection 4 is necessarily larger and inclusive of the exception class created in subsection 10. Family members of the intoxicated person or minor fall within the category of persons who can recover as "individuals" who suffer damage or who are personally injured as a result of the unlawful provision of alcohol to the minor or intoxicated person. Then, subsection 10 excepts from recovery claims of the visibly intoxicated person and the family of that person.[7]

Additionally, a fair reading of the legislative history provides support for recovery for the minor's family. The Senate substitute for House Bill 4550 added the word "minor" to what is now subsection 4, clarifying that a cause of action existed when the licensee provided alcoholic beverages either to a minor or a visibly intoxicated person.[8] A similar change was made in substitute 5

[7] The majority conceded that if the wording of subsection 4 "were ambiguous," the interpretation of subsection 10 "would tip the balance." (*Ante,* p 386.) Recognizing a "possible ambiguity" arising from subsection 10, the majority resolves it against granting a cause of action for family members of intoxicated minor's despite the long-standing history of recovery for these persons. If the Legislature wants to abolish an historically recognized cause of action, we believe it should speak more clearly than it has done with these amendments.

[8]    Except as otherwise provided in this section and sections 22H and 22I, a person injured in person or property by a minor or visibly intoxicated person by reason of the unlawful selling, giving, or furnishing of alcoholic liquor to the minor or the visibly intoxicated person, if the selling, giving, or furnishing is proven to be a proximate cause of the injury or death, or the spouse, child, parent, or guardian of the injured person, shall have a right of action in his or her name against the retail licensee who by the selling, giving, or furnishing of the alcoholic liquor has caused or contributed to the intoxication of the person or has caused or contributed to the injury. Except as provided in section 22K, the spouse, child, parent, or guardian of the minor or the visibly intoxicated person shall not have a cause of action against a retail licensee under this section.

for House Bill 4550.[9] These changes in the House
and Senate versions of the bill marked the begin-
ning of the distinction made throughout the final
statute between a minor and a visibly intoxicated
person.[10]

Both the House and Senate versions included
language providing a cause of action to an individ-
ual injured by a minor or intoxicated person or the
family of the injured person. The versions differed
regarding the right of the family of the non-
innocent party to recover.[11] The House version
precluded suit by the visibly intoxicated person
and the visibly intoxicated person's family.[12] The
Senate version eliminated a cause of action for

---

[9] Except as otherwise provided in this section, an individual
who is personally injured by a minor or visibly intoxicated
person by reason of the unlawful selling, giving, or furnishing
of alcoholic liquor to the minor or visibly intoxicated person, if
the unlawful sale is proven to be a proximate cause of the
injury or death, or the spouse, child, parent, or guardian of that
individual, if the individual, spouse, child, parent, or guardian
has not caused or contributed to, or substantially participated
in the drinking activity resulting in, the intoxication of the
person, shall have a right of action in his or her name against
the person who by the selling, giving, or furnishing the alco-
holic liquor has caused or contributed to the intoxication of the
person or who has caused or contributed to the injury or death.

[10] The language finally enacted by the Legislature mentions both a
minor and a visibly intoxicated person in subsections 3, 4, 6, and 8.
Subsections 7 and 10 mention only the visibly intoxicated person.

[11] The versions also differed regarding various other provisions
including the liquor licensee's right to indemnification and right to
raise the defenses of the intoxicated person and the plaintiff's obliga-
tion to provide notice to the licensee of a potential suit.

[12] The alleged visibly intoxicated person shall not have a cause
of action pursuant to this section nor shall any person have a
cause of action pursuant to this section for the loss of financial
support, services, gifts, parental training, guidance, love, soci-
ety, or companionship of the alleged visibly intoxicated person.
[House Bill 4550-Substitute 6, reported from the House Com-
mittee on Liquor Control on October 1, 1985 and passed (with
several amendments) by the House on December 10, 1985.]

both the family of the minor and the family of the
visibly intoxicated person.[13]

Eventually the two versions were submitted to a
conference committee. A critical issue before the
committee was whether to adopt language preclud-
ing suit by both the visibly intoxicated person's
family and the minor's family or to adopt lan-
guage which precluded only the visibly intoxicated
person's family from bringing suit.[14] The confer-

[13] The text of the Senate version is set forth *supra*, p 391, n 8. In
the proposed Senate Substitute, Senate Bill 478, the language dealt
with both the class of persons entitled to sue and the limitation on
that class created by the noninnocent party doctrine.

[14] There is abundant support in the legislative history for the
notion that debate focused on the issue who was entitled to sue. The
legislative history evidences lobbying by various groups and individu-
als regarding the proposed versions of the bill. The analysis notes that
Mothers Against Drunk Driving opposed language to eliminate the
cause of action of family members of the intoxicated person. House
Republican Bill Analysis—Research and Program Development Sec-
tion of HB 4550 (H-6), November 27, 1985. The State Bar of Michigan
also took a position against the bill objecting to proposals to "put a
limit on what could be recovered from those responsible for a drunk's
condition, bar the drunk's dependents from suing those who know-
ingly made him drunk, and otherwise significantly limit the ability of
those who are seriously injured by drunks to fully recover their
damages." Press Release, State Bar of Michigan, Michael Frank, State
Archives of Michigan, RG 91-286, Box 1, Folder 12. In addition, the
Michigan Insurance Bureau prepared a survey of insurers regarding
the availability of liquor liability insurance and gathered their com-
ments regarding proposed dramshop reforms. Several major insurers
within the state commented that removal of the right to sue from
intoxicated persons and their families would help solve problems with
insurance. Michigan Insurance Bureau, *Liquor liability insurance: A
survey of insurers in Michigan,* 1985. The Michigan Licensed Bever-
age Dealers Association lobbied on behalf of the liquor industry. Some
of their proposals are set forth, *supra,* p 389, n 4. Finally, the House
Republican Committee Conference Report Update specifically men-
tioned differences between existing law, the House-passed version, and
the Senate-passed version of the bill pertaining to who was entitled to
sue. Conference Report Update—Dram Shop, House Republican Cau-
cus, Ben Williams, June 9, 1986. That update noted that under
existing law the family of the intoxicated person could sue. It further
observed that under the House-passed version, the family of the
"minor/drunk can't sue for injuries to minor or visibly intox[icated]
individual." Finally, it reported that the Senate-passed version pre-
cluded suit by the family of a minor/visibly intoxicated person except
that a "minor child of drunk hurt as result of drunk" was entitled to
damages to be held in trust under court control.

ence report included the language from the House
version. It was adopted by both houses and signed
by the Governor.

The conclusion that the minor's family has a
cause of action is also buttressed by the observa-
tion that the Legislature continued the special
treatment afforded to minors and their families by
virtue of MCL 436.33; MSA 18.1004. In fact, while
revising the act in 1986, the Legislature increased
the penalties for serving persons who are under-
age, MCL 436.20; MSA 18.991, and made no
changes to eliminate the cause of action recognized
under § 33 in which minors may sue social hosts in
*Longstreth v Gensel,* 423 Mich 675, 681-683; 377
NW2d 804 (1985).

Although the majority finds support for its con-
clusion that the minor's family lacks a cause of
action in a literal reading of subsection 6, the
name and retain provision, we are unable to agree
with a literal reading of that subsection to abolish
an historically recognized cause of action when the
language, prior judicial construction, and legisla-
tive history all support a different approach.

Subsection 6 was first enacted in 1972 as an
amendment of the dramshop act.[15] From its incep-
tion, the scope of the provision has occasioned
difficulty. Both this Court and various Court of
Appeals panels have fashioned judicial exceptions
to the literal application of the language of subsec-
tion 6.[16] To be sure, as the defendants note, this

---

[15] 1972 PA 196.

[16] See *Salas v Clements,* 399 Mich 103, 110; 247 NW2d 889 (1976)
(recognizing a judicial exception to the name and retain requirement
where the plaintiffs did not know the name of the intoxicated person);
*Scholten v Rhoades,* 67 Mich App 736; 242 NW2d 509 (1976) (recogniz-
ing a judicial exception to the name and retain provision where no
cause of action exists by a parent against a child who is not a third
party tortfeasor); *Schutz v Murphy,* 99 Mich App 386; 297 NW2d 676
(1980) (recognizing a judicial exception to the name and retain provi-

Court has strictly construed the name and retain provision where the parties have sought to circumvent its protections against collusion and fraud.[17] However, even after opinions in which this Court "returned to the course of strict construction,"[18] panels of the Court of Appeals continued to find that subsection 6 did not bar the claims of the families of the intoxicated person. In *Newman v Hoholik,* 138 Mich App 66; 359 NW2d 253 (1984), the Court of Appeals considered the holding of *Putney,* noting that it affirmed the continuing vitality of *Salas* and its rationale, that it failed to reference *Scholten,* and that it employed narrow language. On the basis of these factors, the panel concluded that *Putney* did not impliedly abrogate the holdings of *Scholten* and its progeny.[19]

When the Legislature embarked on this comprehensive review of the dramshop act, opinions of this Court and the Court of Appeals existed that limited the scope of the name and retain provision in some circumstances. One must be cautious about imputing a meaning to legislative inaction,[20]

sion where a wife has no cause of action against her husband for damages arising out of his negligent infliction of injuries upon himself).

[17] See, e.g., *Putney v Haskins,* 414 Mich 181; 324 NW2d 729 (1982); *Riley v Richards,* 428 Mich 198; 404 NW2d 618 (1987). As these opinions make clear, this Court will not permit the parties to circumvent the name and retain provision by entering into covenants not to sue or limiting liability so that the dramshop defendant is left with liability when an available cause of action against the intoxicated person was either settled or limited in some manner by the plaintiff.

[18] See *Spalo v A & G Enterprises (After Remand),* 437 Mich 406, 411; 471 NW2d 546 (1991).

[19] See also *Burke v Angies, Inc,* 143 Mich App 683; 373 NW2d 187 (1985); *Luberski v North,* 148 Mich App 675; 384 NW2d 840 (1986); but see *Moran v McNew,* 134 Mich App 764; 351 NW2d 881 (1982) (a short opinion lacking analysis, but concluding that *Putney* mandated that the minor or visibly intoxicated person be named and retained barring suit by the parents of the injured minor).

[20] See, e.g., *Zuber v Allen,* 396 US 168, 185, n 21; 90 S Ct 314; 24 L Ed 2d 345 (1969) (the "verdict of quiescent years cannot be invoked to

but the existence of *Salas* and *Scholten* and its progeny with no legislative change in subsection 6 supports the view that whatever the Legislature intended to accomplish with the name and retain provision, it did not intend to abolish the minor's family's cause of action.

This conclusion is strengthened by consideration of the Legislature's explicit rejection of a proposal to abolish the cause of action of the minor's family in subsection 10. If, as the defendants contend, the name and retain provision had eliminated claims by the family of the minor, it seems inexplicable that the question whether to exclude the minor's family's claims in subsection 10 would be the focus of debate. Yet, that issue was one of several that divided the House and Senate, resulting in the passage of two versions of the bill and the necessity for a conference committee to create a compromise. It is implausible that the Legislature engaged in this debate regarding the scope of subsection 10 if a previously existing subsection had already eliminated the claims of the minor's family.

Ultimately, the language of subsection 10 barred the claims of the families of visibly intoxicated persons, while omitting language which would have barred the claims of the families of the minor. The majority concludes, despite this omission, that the Legislature implicitly eliminated the claims of the minor's family through subsection 6. This Court has recognized that where the Legisla-

baptize a statutory gloss that is otherwise impermissible"); *Johnson v Santa Clara Co Transportation Agency,* 480 US 616, 672; 107 S Ct 1442; 94 L Ed 2d 615 (1987) (Scalia, J., dissenting) ("vindication by congressional inaction is a canard"). Arguments against the use of legislative acquiescence have been based upon formalist concerns (such as focusing on the intent of the enacting legislature rather than later legislatures) as well as upon realist concerns (such as the indeterminacy of collective legislative intent). See, generally, Eskridge, *Interpreting legislative inaction,* 87 Mich L R 67 (1988).

ture has affirmatively rejected language that would support an interpretation of a statute, that rejection evidences a legislative intent toward a contrary construction.[21] In light of the existing case law suggesting a different interpretation to the name and retain provision, as well as the Legislature's explicit rejection of language that would have accomplished this precise result, we conclude that the Legislature did not intend that the name and retain provision bar these claims.

The majority also finds support for its conclusion in the literal wording of subsection 8.[22] We disagree. Statutory construction is an holistic endeavor. We reiterate that it seems unlikely that the Legislature sought to achieve indirectly in subsection 8 a result that it explicitly rejected in subsection 10.

To be sure, if read in isolation, the language of subsection 8, like that of subsection 6, is susceptible to an interpretation that would preclude suit by the minor's family. A more natural reading of subsection 8 would be that it was intended to allow the licensee to assert available defenses when the plaintiff had a claim against the third party. The Supreme Court Committee on Standard Jury Instructions postulated that the most proba-

---

[21] See, e.g., *People v Petrella,* 424 Mich 221, 243-244; 380 NW2d 11 (1985); *Miller v State Farm Mut Automobile Ins Co,* 410 Mich 538, 567; 302 NW2d 537 (1981); *General Teamsters Union v Uptown Cleaners & Hatters,* 356 Mich 204, 240; 97 NW2d 593 (1959); *People v Adamowski,* 340 Mich 422, 429; 65 NW2d 753 (1954); *Miles ex rel Kamferbeek v Fortney,* 223 Mich 552, 564; 194 NW 605 (1923).

[22] All defenses of the alleged visibly intoxicated person or the minor shall be available to the licensee. In an action alleging the unlawful sale of alcoholic liquor to a minor, proof that the defendant retail licensee or the defendant's agent or employee demanded and was shown a Michigan driver's license or official state personal identification card, appearing to be genuine and showing that the minor was at least 21 years of age, shall be a defense to the action. [MCL 436.22(8); MSA 18.993(8).]

ble effect of this change will be to allow the
licensee to assert the no-fault threshold defenses
as well as eliminating the potential for the li-
censee to be liable to the plaintiff injured in a
fight, although the intoxicated person would es-
cape liability by raising the defense of self-
defense.[23]

II

This interpretation falls short of the most desir-
able result, which would reflect a consistent ap-
proach to the situation the Legislature addressed.
The decision-making process we are engaged in is
neither "linear" nor "purely deductive." Eskridge
& Frickey, *Statutory interpretation as practical
reasoning,* 42 Stan L R 321, 348 (1990). It involves
consideration of a broad range of evidence and
factors to determine the meaning of a particular
text within the context of a particular applica-
tion.[24] We reach this result, however, because the
critical legislative debate indicates an alteration of

[23] SJI2d, p 11-8b.

[24] We think Justice Frankfurter's description of the process is apt:

The intrinsic difficulties of language and the emergence after
enactment of situations not anticipated by the most gifted
legislative imagination, reveal doubts and ambiguities in stat-
utes that compel judicial construction. The process of construc-
tion, therefore, is not an exercise in logic or dialectic: The aids
of formal reasoning are not irrelevant; they may simply be
inadequate. The purpose of construction being the ascertain-
ment of meaning, every consideration brought to bear for the
solution of that problem must be devoted to that end alone. To
speak of it as a practical problem is not to indulge a fashion in
words. It must be that, not something else. Not, for instance, an
opportunity for a judge to use words as "empty vessels into
which he can pour anything he will"—his caprices, fixed no-
tions, even statesmanlike beliefs in a particular policy. Nor, on
the other hand, is the process a ritual to be observed by
unimaginative adherence to well-worn professional phrases.
[Frankfurter, *Some reflections on the reading of statutes,* 47
Col L R 527, 529 (1947).]

what may have been the initial purpose of subsection 4. The addition of the word "minor" in subsection 4 and the insistence on not precluding the minor's family's cause of action in subsection 10 indicates a purpose we may not ignore in the interest of tidying up the ragged edges of the legislation. In this case, "different values will pull the interpreter in different directions," Eskridge & Frickey, *supra,* p 324. When read in conjunction with the statute as a whole, its text, its background and structure, and the context within which it was passed, we think the pull of the literal language of subsection 8 (or subsection 6) is less than the force of the interpretive pull toward other factors.

Justice MALLETT concurred with Justice BOYLE.